BOARD OF COUNTY COMMISSIONERS CLARK COUNTY, NEVADA, THALIA DONDERO, Chairman, MANUAL CORTEZ, KAREN HAYES, RICHARD RONZONE, PAUL MAY, DONALD CLARK, Commissioners, Appellants, *v.* JUDGE EARLE W. WHITE, Jr., JUSTICE OF THE PEACE, LAS VEGAS TOWNSHIP, CLARK COUNTY, NEVADA, Respondent.

No. 16407

December 18, 1986

729 P.2d 1347

*Robert Miller,* District Attorney, *James M. Bartley,* Chief Civil Deputy District Attorney, Clark County, for Appellants.

*John and Elizabeth Foley,* Las Vegas, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

This appeal focuses on the meaning and impact of NRS 176.059. The statute in question provides for the imposition of an administrative assessment fee (assessment fee) in the amount of ten dollars as a surcharge on fines for misdemeanor pleas or convictions and the violation of municipal ordinances. The essential issue before us concerns the character and disposition of the funds generated by the assessment fee. The dispute giving rise to the present controversy occurred when the respondent justice of the peace sought approval of a requisition for necessary pieces of equipment costing approximately $6,173.00. The Clark County Director of Budget and Financial Planning (the director) denied the request on the basis that the justices' court budget did not include appropriations for capital items. Respondent's clerk then asked the director to secure the funds from assessment fee collections. This suggestion also proved unavailing as the director informed the court clerk that all assessment fee monies were committed to funding, *pro tanto,* the 1984-85 justices' court operational budget. Respondent thereafter petitioned the Board of County Commissioners of Clark County, where he again unsuccessfully invoked NRS 176.059 as an appropriate source of funds for the equipment purchase. Finally, respondent received relief in the form of mandamus from the district court compelling Clark County to purchase the requisitioned items. This appeal followed.

The mootness doctrine arises as a threshold issue because

Clark County has purchased the equipment involved in the controversy before the district court. This Court has long adhered to the general rule that denies review to cases rendered moot by the happening of events subsequent to the initial controversy. NCAA v. University of Nevada, 97 Nev. 56, 624 P.2d 10 (1981). However, the nature of the initial controversy in the instant case extends far beyond the subissue presented by the requisition for specified items of equipment. The primary thrust of this appeal concerns the meaning of a statute that continues to generate substantial revenue of uncertain character and constraints. Thus, the potential for recurring disputes under the statute is great, with equally significant prospects for evading review for reasons which may be more practical than lawful. Moreover, the continuing uncertainty burdening the statute presents substantial and vexing problems to agencies charged with the responsibility of meeting the fiscal needs of government. We therefore conclude that the mootness doctrine must yield in the public interest to the more pressing expedient of statutory interpretation. *See* Ballard v. Anderson, 484 P.2d 1345 (Cal. 1971).

In granting relief to respondent, the district court held that the special account maintained in the County's general fund constituted "an addition to and not a supplement to or reduction from the funds normally allocated to the Justice Courts from the general fund." The court then declared, "While the County must regulate the special fund, the fund is for the exclusive benefit of the Justice Courts." On appeal, appellants contend that the district court's ruling creates an unlawful interference with statutorily established budgetary processes coupled with an illegal arrogation of power in the justices' courts to control local government budgeting. Specifically, appellants charge respondent and the district court with erroneously adopting a position that requires the County to maintain a funded special account upon which a justice of the peace "may compel expenditures on demand."

Appellants urge upon us the proposition that such a position is both unlawful and "unworkable under the overall statutory scheme of local government budgeting." There is, however, grist for each party's mill in this appeal. If, as appellants would have us believe, the assessment fee is nothing more than another general revenue measure to fund the needs of government, the statutory mandate for the establishment of a special account for the use of the justices' courts would be vacuous. Obviously, with or without the assessment fee and the special account, the fiscal requirements of the judicial branch of government would have to be supplied from public money. On the other hand, the appropriation of public funds to satisfy, in whole or in part, the budgetary

needs of government entities is clearly outside the judicial function. Moreover, an unrestrained power in the judiciary to command unbudgeted public funds, available or not, upon demand, would create an intolerable challenge to any responsible scheme of governmental budgeting.

When a statute is of doubtful import and subject to opposite meanings, limited resort may be had to testimony and committee discussions concerning the legislation in question. Maynard v. Johnson, 2 Nev. 25 (1866). The legislative history surrounding the birth of NRS 176.059-.075 is, however, of limited benefit. Nevertheless, it is apparent from the committee discussions and testimony preceding the enactment of the legislation that court improvement, capital equipment acquisition by the courts and budgetary relief for the cities and counties were among the anticipated benefits of the legislation. We have recognized that "a reading of legislation which would render any part thereof redundant or meaningless, where that part may be given a separate substantive interpretation, should be avoided." Bd. of County Comm'rs v. CMC of Nevada, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983). Our task may thus be described as ascertaining and articulating the statutory intent consonant with both the language of the statute and the clear expressions of purpose surrounding its advent.

In considering the legislative history of the statute, its express wording and the obvious need to reconcile conflicting inferences in harmony with fiscally sound budgeting imperatives, we conclude that the statute is neither fish nor fowl. It is clear from the language of the statute earmarking its revenues primarily for the use of the judiciary that the measure is not simply a general revenue measure designed to assist in the funding of government. It follows, therefore, that such revenues may not be viewed merely as base funding for the operating budgets of the courts or, in this instance, the justices' courts. Credence for this proposition may be seen in that segment of the statute that specifically designates an aliquot part of the revenue deposited with the state controller for the development of a uniform system for judicial records. NRS 176.061(1)(b). The latter use of the assessment fee revenues relates strictly to the improvement of the court system as opposed to funds generally budgeted for the ongoing operational needs of the courts.

Both the peculiar language of the statute and its historical inducements also suggest an intent on the part of the Legislature to benefit the general funds of the governmental entities charged with the responsibility of funding the functions of government. Support for this premise is revealed by the statutory language of

NRS 176.061(2), which provides that all funds received by the state controller that are in excess of the funds authorized for expenditure must be credited to the state general fund.

The foregoing analysis distills into two basic conclusions: (1) the assessment fee provides a source of funds for court improvement and capital acquisitions which is in addition to general fund allotments necessary to fund the annual operational budgets of the courts; and (2) such monies earmarked for, but unused by, the court system during each fiscal year are transmuted into general fund monies available for use by the accountable government agency as it sees fit. Such funds are not to be accumulated from year to year for the exclusive use of the courts.

We are not unmindful that the foregoing resolution fails to eliminate residual problems in administration and budgeting. These problems will be minimized, however, if the collecting and dispensing governmental entities retain unused assessment fee revenues until the end of each fiscal year before releasing them to non-judicial uses. Additionally, we would view it to be in the best tradition of cooperative government if, working together, responsible judicial officials and staff and the governing body were to attempt to accommodate the earliest and best use of assessment fee revenues by projecting, to the extent possible, likely claims against the special fund. The latter process may render the governing body vulnerable to unexpected claims by the judiciary against funds already expended, but this risk would have to be evaluated and resolved in accordance with the best interests of the governing body.

Finally, it is apparent from our disposition of this matter that we reject the contention that the use of assessment fee revenues becomes inconsequential under the doctrine of Young v. Board of County Commissioners, 91 Nev. 52, 530 P.2d 1203 (1975). Under *Young,* we determined that a governing body could not withhold available funds from the necessary and reasonable demands of the judiciary. The *Young* doctrine addresses itself to situations where available funds which are necessary to the fulfillment of constitutional responsibilities by the judiciary are withheld. The issue before us extends beyond the problem of funding for judicial imperatives to funding for judicial improvement. While either category of funding may be supplied by court order stemming from the inherent or statutory powers of the courts, respectively, it would indeed be a most reluctant use of the judicial power to accomplish funding in either case by such extraordinary means. The people, from whom the branches of government receive vitality, have a reasonable expectation of

cooperative effort among those branches to implement the functions of government. *There is simply no basis for concluding that the cooperative spirit of the past will not continue.*

We have said nothing that would indicate a carte blanche authority in the courts, including the respondent court, to unrestricted access to assessment fee revenues. Nevertheless, since the Legislature created the assessment fee primarily to facilitate the improvement of the court system from which the fees are generated, requests from judicial officers for the expenditure of funds produced from that source must be viewed as presumptively reasonable. The regulating, budgetary authority may, however, withhold approval and disbursement of such requisitions upon a showing sufficient to rebut the presumption of validity.

For the reasons specified above, the judgment of the district court is affirmed.

MOWBRAY, C. J., and YOUNG, J., concur.

GUNDERSON, J., and SPRINGER, J., concurring in the result:

We are reluctant to endorse precatory dicta as to how the concerned governmental officials should perform their administrative responsibilities, or as to the frame of mind with which those responsibilities should be pursued. Accordingly, with all respect to our colleagues, we state our views separately. We do, however, fully agree with our brethren that the district court ruled correctly in this case and should be affirmed.

As noted above by our brethren, from the language of the statute, by earmarking assessment fee revenues primarily for the use of the judiciary, the legislature clearly did not intend to create simply a general revenue measure to assist in the funding of government. Nor did the legislature intend to release the various municipalities from the obligation to fund their courts adequately, in good faith, out of general revenue funds.

What the legislature quite evidently intended, rather, was to provide the courts with a source of supplemental funding, derived directly from persons using the courts, to be employed at the discretion of the judiciary in improving their courts and increasing their courts' efficiency. To achieve these ends, we think innovation and reasonable experimentation were contemplated, and only if a municipality can show that a proposed use of assessment-fee funds is palpably unreasonable is the municipality's reversionary interest to be deemed invaded.

In this case, the trial judge clearly decided that no such invasion had been established, and we cannot fault this determination.