OPINION
By the Court,
Hardesty, J.:
This original petition for a writ of mandamus or prohibition concerns a district court order that granted writs of prohibition and mandamus after an administrative appeal was taken from a special use permit decision, and it raises several important issues. Preliminarily, we determine whether NRS 2.090(2) allows a party to immediately appeal from an interlocutory order granting man *1199 damus relief, thereby precluding writ relief. Because we conclude that, under NRS 2.090(2), a party may appeal from an order granting a writ of mandamus only when that order finally resolves all of the issues in the case, and the order in this case left issues pending, our consideration of this writ petition is appropriate.
Next, we examine who may administratively challenge a planning commission special use permit decision. We conclude that any person who satisfies a relevant local ordinance’s aggrievement standards may appeal to the governing body in accordance with the appropriate procedures, even if that person did not appear before the planning commission.
Finally, we decide how that administrative challenge should proceed and whether it can be abandoned. We conclude that, since the law requires an administrative appeal from a planning commission decision to be instituted by an aggrieved person and considered with respect to the appellant’s particular grievance allegations, even after aggrievement is established and the appeal proceeds on the merits, the appeal nonetheless may be abandoned if the appellant does not prosecute it.
In this case, the administrative appellant never satisfied the local ordinance’s aggrievement standards by demonstrating that her property rights might be affected by the planning commission’s decision. Accordingly, the administrative appeal was never perfected and the City Council was without authority to proceed with it. As the City Council nevertheless proceeded with the appeal and ruled on its merits, the district court did not manifestly abuse its discretion in directing the City Council to vacate its decision, and we deny this petition for extraordinary relief.

FACTS

This petition arises from administrative proceedings in which the North Las Vegas City Council[1] reversed, on administrative appeal, a planning commission decision approving Check City Partnership’s application for a special use permit to establish a payday loan operation.[2] After the City Council denied Check City’s application, Check City instituted district court proceedings challenging the City Council proceeding. Ultimately, the district court issued writs of mandamus and prohibition vacating the City *1200 Council decision and reinstating the planning commission decision approving the permit. The circumstances leading up to the district court’s decision are as follows.
In November 2004, Check City leased property in the City of North Las Vegas, intending to operate a check cashing and payday loan business on the premises. As the North Las Vegas Municipal Code requires a permit to operate a financial institution in the proposed location, Check City applied to the North Las Vegas Planning Commission for a special use permit. The planning commission approved Check City’s application. Thereafter, even though she had not attended any planning commission hearings, North Las Vegas resident Kimberly Davis timely filed an administrative appeal with the City Council, challenging the special use permit.
In filling out the administrative appeal form, Davis improperly checked a box indicating that she lived within 300 feet of the proposed Check City location, when her residence was actually more than 900 feet away. Because Davis lived more than 300 feet from the location, the North Las Vegas Municipal Code (the Code) required that she show, by affidavit, that her property rights were or would be affected by the planning commission decision.[3] Consequently, Check City sent a letter to the City Council, objecting to Davis’s appeal because she did not live within 300 feet of the proposed location and had not filed an affidavit showing how the planning commission decision would affect her property rights.
Apparently, the City Council notified Davis of the problem with her appeal form, and Davis submitted the required preformatted affidavit, identifying the reason for her appeal. In her affidavit, when directed to describe the property rights/interests affected by the planning commission decision, Davis merely provided, “over-saturation of the same type of business” in the area.
The City Council held a public hearing on the matter the same day, at which Davis’s affidavit “amending” her administrative appeal form was noted and apparently accepted, without discussion. Davis, however, failed to appear at the hearing. Instead, Deborah Lewis, who was present on Davis’s behalf, moved to continue the hearing so that Davis might have a chance to personally attend. The City Council agreed to continue the hearing.
Check City thereafter delivered a second letter to the City Council, this time objecting to Davis’s appeal on the basis that she was not “aggrieved” by the planning commission’s decision, as defined in NRS 278.3195(1), because she had not attended any planning commission hearing. In this second letter, Check City also objected to the City Council’s apparent acceptance of Davis’s amended appeal form as timely.
*1201 Less than one month later, the City Council held the second public hearing on Davis’s appeal. At that hearing, the City Council heard statements, both for and against Check City’s application, from several residents and other parties, including Deborah Lewis. Davis, however, did not attend, and Lewis, this time, did not indicate that she attended on Davis’s behalf. Ultimately, the majority of City Council members voted to deny the application.
As a result, Check City filed a “verified complaint” in the district court, in which it sought writs compelling the City Council to cease any activities relating to the special use permit application and to vacate its decision, thereby allowing the planning commission decision to stand, or, in the alternative, to compel the City Council to approve the application. Check City alleged that, under the Code, the planning commission decision should have become final, since it was not properly appealed within the relevant time frame by an aggrieved party. Specifically, Check City asserted that, because Davis had not attended the planning commission hearing and had failed to timely file a proper administrative appeal from the planning commission decision, she was not aggrieved, and thus, the City Council had exceeded its authority in considering her appeal. In addition, Check City asserted that the City Council had abused its discretion in denying the application without making relevant findings regarding Davis’s standing to appeal. Finally, Check City also requested damages and attorney fees under NRS 278.0233 (allowing damages for improper administrative decisions regarding permits) and NRS 278.0237 (authorizing attorney fees), respectively.[4]
The district court ultimately determined that, although Davis’s appeal was timely and not barred by her failure to attend the planning commission hearing, Davis abandoned her appeal by failing to appear at any City Council hearing, establish her standing to appeal under the Code, and prosecute her challenge to the planning commission decision. The court then issued writs of prohibition and mandamus prohibiting petitioners from giving effect to the City Council decision denying the special use permit and directing them to treat as final the planning commission decision approving Check City’s application. The damages portion of the complaint, however, remains pending.
The City Council moved for reconsideration, explaining its position that, because it will accept and conduct a de novo hearing regarding only the first timely filed appeal, regardless whether others wished to appeal, it could not then allow that first and only appeal to be abandoned. The City Council also asserted that the court apparently had not considered Deborah Lewis’s appearance *1202 at the second hearing, purportedly on Davis’s behalf. The district court denied reconsideration, finding it “problematic” that the City Council bars other persons from administratively appealing once an appeal is filed.
Consequently, the City Council and other North Las Vegas officers filed this writ petition, arguing that the district court had usurped the City Council’s authority to interpret and apply land use laws. We granted a stay and directed an answer, which Check City timely filed.
The writ petition and answer raise three main issues. First, is writ relief unavailable because an adequate legal remedy exists by means of an immediate appeal from the interlocutory order granting mandamus relief under NRS 2.090? Second, was Davis’s appeal barred because she did not meet NRS 278.3195(l)’s definition of an “aggrieved” person as one who has appeared before the planning commission, even though the North Las Vegas Code defines who is considered “aggrieved” more broadly? And finally, can an administrative appellant abandon her challenge to a planning commission decision?

DISCUSSION

The City Council has petitioned for a writ of mandamus or prohibition. A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station,[5] or to control an arbitrary or capricious exercise of discretion.[6] As the counterpart to a writ of mandamus, a writ of prohibition is available when a district court acts without or in excess of its jurisdiction.[7] Generally, however, neither writ will issue when the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law.[8] Check City asserts that petitioners have an adequate legal remedy that precludes writ relief, since they may immediately appeal from the interlocutory district court order granting mandamus relief under NRS 2.090.[9]

*1203
NRS 2.090(2) does not entitle a party to immediately appeal from an interlocutory order granting mandamus relief

In exercising our appellate jurisdiction, which originates in the Nevada Constitution, we look to statutes and court rules.[10] A pertinent statute, NRS 2.090(2), provides that “[t]he Supreme Court has jurisdiction to review upon appeal ... an order granting or refusing to grant . . . mandamus in the case provided for by law.” Under the rule of appellate procedure generally governing jurisdiction in civil cases, on the other hand — NRAP 3A(b) — an appeal is permitted only “[f]rom a final judgment in an action or proceeding,”[11] and certain other specified orders, none of which is an order granting or refusing to grant a writ of mandamus.
We have previously relied on both NRS 2.090(2) and NRAP 3A(b)’s final judgment language in determining that appellate review of an order denying mandamus relief is available. In Ashokan v. State, Department of Insurance,[12] we characterized a district court order denying a writ of mandamus as ‘‘a final judgment within the meaning of NRAP 3A(b)(l),” appealable under NRS 2.090(2) and the NRAP, without express regard to whether that order resolved all the issues presented in the proceeding. But as the order in Ashokan resolved the entire proceeding, it constituted the final judgment in that case, and thus our holding did not address the appealability of a district court order that grants or denies a request for mandamus relief while leaving other claims pending.[13]
Both NRS 2.090(2) and Ashokan are silent under these circumstances. In asserting that, under NRS 2.090(2)’s express language, this court may review orders granting mandamus only “in the case provided for by law,” the City Council persuasively argues that this emphasized language refers to the law governing mandamus proceedings in NRS Chapter 34.[14] NRS 34.310 subjects appeals from district court mandamus proceedings to the rules of appellate procedure.[15] Because no rule of appellate procedure *1204 authorizes appeals from interlocutory orders granting or denying a request for a writ of mandamus, NRS 2.090(2) does not provide authority to appeal from an interlocutory order granting or denying mandamus relief.
We note that this interpretation of NRS 2.090(2) is consistent with our holding in Ashokan — that orders granting mandamus are appealable under that statute and the rules of appellate procedure. Accordingly, since NRS 2.090(2) does not provide this court with jurisdiction over the interlocutory orders granting extraordinary relief in this case, the City Council has no immediate right to appeal.
Although petitioners may ultimately appeal from the court’s final judgment resolving the remaining damages claims, we will exercise our discretion to consider writ petitions despite the existence of an otherwise adequate legal remedy when an important issue of law needs clarification and this court’s review would serve considerations of public policy, sound judicial economy, and administration.[16] As this petition raises issues that meet these exceptions to the general rule, we will consider its merits.
Now that we have settled that this writ proceeding is appropriate, we consider the two issues it raises: (1) whether Davis, as an aggrieved person with standing to appeal, properly administratively appealed the planning commission’s special use permit decision, and (2) whether an administrative appeal may be abandoned, so that Davis’s abandonment of her appeal divested the City Council of authority to consider its merits.

Standing to appeal from special use permit decisions can be satisfied by meeting local ordinance standards

Whether a would-be appellant has standing to challenge a special use permit decision is a threshold issue. In this case, the answer depends, in part, on whether a Nevada statute’s definition of aggrieved persons is exclusive, or whether local ordinances may expand the number of persons who may appeal by broadening the scope of who is “aggrieved.”
Planning commission decisions involving special use permits may be challenged in accordance with local ordinances adopted under NRS 278.3195.[17] NRS 278.3195 requires most local governing bodies to adopt an ordinance governing administrative appeals from land use decisions, including those made by a planning commission. Under NRS 278.3195(1), the ordinance must allow *1205 “any person who is aggrieved by” a planning commission decision to appeal to the governing body. That subsection goes on to define who is aggrieved under the local ordinance in counties having populations of at least 400,000 people: “a person shall be deemed to be aggrieved under an ordinance adopted pursuant to this subsection if the person appeared, either in person, through an authorized representative or in writing, before [the planning commission], on the matter which is the subject of the decision.”[18]
Check City argues that NRS 278.3195(l)’s definition of an aggrieved person means that only someone who appeared at the planning commission’s hearing on the special use permit application may properly appeal. Because Davis did not appear before the planning commission when it reviewed Check City’s application, Check City asserts that she lacked standing to administratively appeal in the first instance. We conclude, however, that NRS 278.3195(1) does not limit who may challenge a planning commission decision when a pertinent local ordinance, enacted under this statute, enlarges the group of persons who may appeal.
When “a statute is clear on its face,” a court applies its plain language and may not go beyond that language in determining the legislature’s intent.[19] But when a statute is ambiguous, meaning it “is capable of being understood in two or more senses by reasonably informed persons,” a court may look to its legislative history, public policy, and reason to determine what the legislature intended.[20]
Because the statute’s plain language could reasonably be read as limiting the definition of “aggrieved” regardless of an ordinance’s broader language, or as allowing an ordinance to adopt a more broad definition of “aggrieved,” the statute’s language is ambiguous, and we thus turn to the statute’s legislative history, public policy, and reason for guidance.

Legislative history of NRS 278.3195(l)’s “aggrieved” definition

The definition of “aggrieved” in NRS 278.3195(1) was added to the then-existing statute in 2003, by Assembly Bill 291.[21] In *1206 discussing the initial draft of A.B. 291 before a legislative committee, a legislative advocate indicated that some local entities interpreted the statute to allow only the special use permit applicant to appeal, but the original statute’s intent was generally to “give people of standing, who were considered to be aggrieved, the ability to appeal.”[22] Hence, in one city, the advocate noted, an ordinance was worded more broadly to allow several different persons to appeal, including the applicant, the owner, and any person who made formal oral or written comments on the application. With the amendment, the statute’s definition of ‘“standing to appeal’ was expanded to include other persons,’ ’[23] thereby clarifying that others besides merely the applicant could appeal. Thus, as taken from the committee hearing comments, the Legislature’s intent was to expand the definition of “aggrieved,” not to limit it.
Accordingly, in amending the statute, the Legislature did not abolish or limit any of the expanded standing definitions that previously had been imposed by the ordinances and that were discussed during the committee’s hearing.[24] Further, the Legislature chose not to define “aggrieved” for appeals in counties with populations of less than 400,000, suggesting that the amendment was not intended to preclude ordinances from also addressing who may appeal from a planning commission decision. Thus, in accordance with NRS 278.3195(l)’s legislative history, the expressed policy to expand who may appeal, and what appears most reasonable, a local ordinance adopted under NRS 278.3195 may validly broaden the definition of who may appeal.

North Las Vegas Municipal Code § 17.28.050

Code § 17.28.050 is the City of North Las Vegas ordinance governing procedures regarding special use permits. With regard to appeals to the City Council from a planning commission’s special use permit decision, the ordinance provides that, among others, any person “who may establish that his [or her] property rights are or may be affected by the decision” may appeal.[25] The Code requires that any person asserting this basis to appeal must state in an affidavit, “the nature and location of his [or her] property *1207 interest and the manner in which this property interest will be affected by the decision being appealed.”[26] The appellant must also “specify wherein there was error in the decision of the planning commission.’ ’[27]
Thus, under the ordinance, an appellant proceeding under a theory that his or her property rights will likely be affected by a planning commission decision must establish, as a threshold matter, his or her standing to administratively appeal to the City Council. The City Council has discretion to determine whether the appellant meets that standard. But here, Davis’s affidavit did not demonstrate how her property interest would likely be affected by the planning commission’s decision to grant Check City a special use permit, and neither she nor any person on her behalf appeared at the City Council hearings to show how she met the Code’s “aggrieved” requirements. Further, the hearing transcripts and other documents do not indicate that the City Council somehow otherwise determined that Davis had demonstrated her standing to administratively appeal. Accordingly, the City Council inappropriately proceeded with the hearing even though Davis had failed to demonstrate her standing to appeal under the Code.

An appeal to the City Council from a planning commission decision may be abandoned

Even though the City Council proceeded to hear an appeal in which no standing to challenge the planning commission decision was demonstrated, it argues that its authority over the matter was invoked by Davis’s timely filed administrative appeal, and thus, the district court’s decision to reinstate the planning commission decision, based on Davis’s subsequent abandonment of her appeal, invaded its powers to exercise its authority over the appeal. Pointing out that under “settled land use practice,” it allows the filing of only one appeal from a special use permit decision,[28] the City Council states that it consequently will not permit an appeal to be “abandoned.” This practice is allowed, the City Council asserts, because under the Code, its authority to hear a matter is vested with the timely filing of an appeal, triggering a hearing de novo;[29] therefore, according to the City Council, “[t]he filing of a single *1208 appeal preserves the rights of all citizens to participate in the hearing de novo.”
Noting that its interpretation of land use laws is cloaked with a presumption of validity,[30] the City Council argues that its “one appeal” practice is also supported under its interpretation of the Code, which discusses “an” appeal and provides that “a” fee must be paid to help defray costs of mapping, noticing, and other administrative and investigative expenses. Further, the City Council contends that its interpretation makes sense, as a land use decision may affect an entire neighborhood, and each individual person should not be required to separately file an administrative appeal, especially as it allows all concerned persons to be heard at the de novo hearing.
Despite the City Council’s arguments to the contrary, its practice of allowing only one appeal to be filed is, in the words of the district court, “problematic.” Once a person’s aggrieved status has been established, NRS 278.3195 and the Code require the City Council to focus on the effect that the planning commission’s decision will have on the administrative appellant.[31] The statute allows appeals only by persons aggrieved by that decision, and the ordinance requires that the appellant specifically allege how the planning commission erred in rendering its decision.[32] Hence, NRS 278.3195 and the Code plainly require the City Council to consider appeals with a view toward the appellant’s alleged grievance.[33] Since would-be appellants may have dissimilar grievances, allowing only one appeal could prevent others’ grievances from being adequately addressed.
Moreover, as in this case, other aggrieved persons’ rights to challenge a planning commission decision might be impacted by the first appellant’s failure to file a jurisdictionally proper appeal or to adequately prosecute the appeal. Accordingly, NRS 278.3195 contemplates the possibility that more than one appeal will be *1209 filed, as it requires an ordinance adopted under it to “[s]et forth procedures for the consolidation of appeals.”[34]
Thus, we cannot read the Code as the City Council urges, for to do so would eviscerate the purpose of both statutory and local ordinance provisions. While the City Council must conduct its review of the application with a “hearing de novo,”[35] that term in this instance means that the City Council may hold a new hearing and consider the evidence presented without deference to the planning commission’s factual findings and conclusions of law, but not entirely “as if the original hearing had not taken place,” since to do so would ignore the provisions requiring the City Council to examine the appellant’s standing and alleged grievance.[36] As a result, an appeal may be abandoned, and the City Council exceeded its authority when it continued to consider Davis’s appeal not only without adequately examining Check City’s concerns about Davis’s standing, but also outside the context of her specific grievance.

Because the City Council was without authority to proceed with Davis’s appeal, the district court properly granted Check City extraordinary relief

Even if an appeal to the City Council can be abandoned, the City Council argues, the district court improperly determined that Davis had abandoned her appeal in this case. We do not reach the question of whether, given the City Council’s practice of allowing the filing of one appeal to trigger the appeal rights of all potential appellants, Davis intended to abandon her appeal, however, because we conclude that, by proceeding with the administrative appeal’s merits even though Davis never demonstrated her standing to appeal, the City Council exceeded its authority.
Under the Code, a planning commission decision becomes final eight days after it is issued, unless an appeal is filed by an aggrieved person, as defined in the Code.[37] Although Davis’s appeal was filed within the eight-day administrative appeal period, it was unclear at that time whether she met the Code’s aggrievement standards. And while the City Council properly allowed her *1210 to show that she met those standards even after her appeal was filed, she failed to do so.
Accordingly, because Davis failed to show that she was aggrieved, the City Council’s administrative authority to hear and rule on the merits of Davis’s appeal was never properly invoked. Because the City Council’s authority to hear the appeal was never properly invoked, the planning commission decision became final. And although the dissenting justice expresses concern over other administrative appeals that were potentially barred by the City Council’s improper “one appeal” practice, he has pointed us to no authority that would allow the City Council to vacate an administrative decision once it becomes final. In any case, the City Council has identified no person who was denied the right to file an appeal because of the “one appeal” practice.
Because the City Council proceeded with Davis’s appeal in violation of the law, the district court properly granted extraordinary relief and directed that the City Council vacate its invalid decision and reinstate the planning commission decision. Accordingly, the City Council has not demonstrated that relief from the district court’s decision is warranted, and its petition is therefore denied.

CONCLUSION

NRS 2.090(2) does not provide a party with the immediate right to appeal from an interlocutory order granting mandamus relief. Accordingly, as this petition is not precluded by the availability of an immediate appeal and meets the exceptions to the general rule governing our review of petitions for extraordinary relief, we exercise our discretion to consider the City Council’s writ petition concerning Davis’s standing to administratively appeal.
As permitted by NRS 278.3195(1), the Code provides for an appeal by any person who can show that his or her property interests may be affected by a planning commission decision. Because Davis never demonstrated that her property rights might be affected by the planning commission’s decision to grant Check City a special use permit to operate a payday loan center, the City Council exceeded its authority in ultimately considering the merits of her appeal. As a result, the district court did not manifestly abuse its discretion in granting extraordinary relief to set aside the City Council’s decision approving Check City’s application and to reinstate the planning commission decision.
Accordingly, we deny this petition.[38]
Rose, C. J., Becker, Maupin, Gibbons and Parraguirre, JJ., concur.

 Like the City Council, the City of North Las Vegas, Mayor Michael L. Montandon, Mayor Pro Tem and Councilmember William E. Robinson, and Councilmembers Robert L. Eliason, Stephanie S. Smith, and Shari Buck are petitioners.

 Check City Partnership and Mesa Investments, LLC, which owns the property at which the proposed payday loan center is to be established, are the real parties in interest. Collectively, they are referred to as Check City.

 See North Las Vegas, Nev., Municipal Code § 17.28.070(D)(1).

 Check City also requested, as an alternate form of relief, judicial review of the City Council decision. The district court did not reach this issue.

 NRS 34.160; see also Smith v. District Court, 107 Nev. 674, 818 P.2d 849 (1991).

 Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).

 State of Nevada v. Dist. Ct. (Anzalone), 118 Nev. 140, 146-47, 42 P.3d 233, 237 (2002); NRS 34.320.

 Harvey L. Lerer, Inc. v. District Court, 111 Nev. 1165, 1168, 901 P.2d 643, 645 (1995); NRS 34.170; NRS 34.330.

 See Pan v. Dist. Ct., 120 Nev. 222, 224, 88 P.3d 840, 841 (2004) (noting that if appellate jurisdiction is proper, writ relief is inappropriate because an appeal is an adequate remedy).

 See Nev. Const, art. 6, § 4; Taylor Constr. Co. v. Hilton Hotels, 100 Nev. 207, 678 P.2d 1152 (1984).

 NRAP 3A(b)(1).

 109 Nev. 662, 665, 856 P2d 244, 246 (1993).

 See Lee v. GNLV Corp., 116 Nev. 424, 426, 996 P.2d 416, 417 (2000) (clarifying that “a final judgment is one that disposes of all the issues presented in the case, and leaves nothing for the future consideration of the court, except for post-judgment issues”).

 Cf. State v. Ducker, 35 Nev. 214, 225-26, 127 P. 990, 993-94 (1912) (recognizing that “in the case provided for by law,” as mentioned in a former version of NRS 2.090 with respect to injunctive relief, refers to the sections of the statutes concerning injunctions).

 Ashokan, 109 Nev. at 665, 856 P.2d at 246.

 Dayside Inc. v. Dist. Ct., 119 Nev. 404, 407, 75 P.3d 384, 386 (2003).

 NRS 278.315(6).

 NRS 278.3195(1).

 McKay v. Bd. of Supervisors, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986).

 Id. at 649, 730 P.2d at 442; see also Beazer Homes Nevada, Inc. v. Dist. Ct., 120 Nev. 575, 582, 97 P.3d 1132, 1137 (2004).

 2003 Nev. Stat., ch. 314, § 3, at 1734-35.

 Hearing on A.B. 291 Before the Assembly Government Affairs Comm., 72d Leg. (Nev., March 28, 2003).

 Id.

 See generally Ronnow v. City of Las Vegas, 57 Nev. 332, 365, 65 P.2d 133, 145 (1937) (recognizing that, “[w]here express terms of repeal are not used, the presumption is always against an intention to repeal an earlier statute, unless there is such inconsistency or repugnancy between the statutes as to preclude the presumption, or the later statute revises the whole subject-matter of the former”).

 North Las Vegas, Nev., Municipal Code § 17.28.050(D)(1).

 Id.

 Id.

 The City Council supports its “settled practice” assertion with affidavits from the City of North Las Vegas clerk and the Clark County planning manager and designated zoning administrator, providing that the governing bodies of those places will accept only one appeal from a land use decision and that the appellant is not required to appear at any subsequent hearing.

 See North Las Vegas, Nev., Municipal Code § 17.28.050(D)(2), (3).

 Boulder City v. Cinnamon Hills Assocs., 110 Nev. 238, 247, 871 P.2d 320, 326 (1994).

 See North Las Vegas, Nev., Municipal Code § 17.28.050(D).

 Id. § 17.28.050(D)(1), (3).

 See Bd. of County Comm’rs v. CMC of Nevada, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983) (“Courts must construe statutes and ordinances to give meaning to all of their parts and language. The court should read each sentence, phrase, and word to render it meaningful within the context of the purpose of the legislation.” (citations omitted)); Clark Co. Sch. Dist. v. Local Gov’t, 90 Nev. 442, 446, 530 P.2d 114, 117 (1974) (recognizing that deference to an agency’s interpretation of the written law is appropriate only when that interpretation is within the written law’s language).

 NRS 278.3195(3)(a).

 North Las Vegas, Nev., Municipal Code § 17.28.050(D)(3).

 Black’s Law Dictionary 738 (8th ed. 2004) (defining “hearing de novo” as when the reviewing court conducts a new hearing on a matter and either (1) merely gives “no deference” to the lower tribunal’s rulings, or (2) treats the matter “as if the original hearing had not taken place”); CMC of Nevada, 99 Nev. at 744, 670 P.2d at 105 (“A reading of legislation which would render any part thereof redundant or meaningless, where that part may be given a separate substantive interpretation, should be avoided.”).

 North Las Vegas, Nev., Municipal Code § 17.28.050(C)(3)(a), (D)(1).

 0ur December 23, 2005 stay is hereby vacated.