141 Nev., Advance Opinion 48

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| RENO REAL ESTATE DEVELOPMENT, LLC; AND RENO PROPERTY MANAGER, LLC, Appellants/Cross-Respondents, vs. SCENIC NEVADA, INC., Respondent/Cross-Appellant. | No. 87514 |

**FILED**

**OCT 16 2025**

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

No. 87549

CITY OF RENO,
Appellant/Cross-Respondent,
vs.
RENO REAL ESTATE
DEVELOPMENT, LLC; AND RENO
PROPERTY MANAGER, LLC,
Respondents,
and
SCENIC NEVADA, INC.,
Respondent/Cross-Appellant.

Consolidated appeals and cross-appeals from a district court order granting in part and denying in part a petition for a writ of mandamus challenging a city ordinance adopting a development agreement and proposed signage. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

*Vacated and remanded.*

Karl Schleigh Hall, III, City Attorney, and Jasmine K. Mehta, Deputy City Attorney, Reno,
for City of Reno.

Womble Bond Dickinson (US) LLP and Dale Kotchka-Alanes, Las Vegas, and Darren J. Lemieux, Lucy C. Crow, and Brittni A. Tanenbaum, Reno, for Reno Property Manager, LLC, and Reno Real Estate Development, LLC.

 

25-45165

Law Offices of Mark Wray and Mark D. Wray, Reno, for Scenic Nevada, Inc.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, C.J.:

Development agreements are important tools for government entities and developers alike to facilitate growth in communities and provide certainty during the building process. Given the disruptive nature of challenges to these agreements, only those who are requisitely aggrieved by land use decisions have standing to challenge these agreements. Below, Scenic Nevada, Inc., challenged, via a petition for writ relief, a development agreement entered into by Reno Real Estate Development, LLC, and Reno Property Manager, LLC (collectively, the Developers) with the City of Reno, arguing that three proposed area identification signs contained within the agreement were unlawful billboards. The development agreement, however, expressly explains that area identification signs are regulated differently than off- or on-premises advertising displays, like billboards, under the Reno Municipal Code (RMC). The district court, concluding that Scenic had standing to challenge the agreement, partially agreed with Scenic and concluded that two of the three signs were unlawful. In this opinion, we clarify both the legal presumption that applies to a city's

interpretation of municipal land use codes and the beneficial interest standing requirement for writ relief.[1]

## FACTS

The Developers entered into a development agreement with the City of Reno to develop the Neon Line District in downtown Reno. Bound by Keystone Avenue to the west, I-80 to the north, West Street to the east, and West Second Street to the south, the district was slated to be a dynamic, mixed-use entertainment area. The development agreement provided for the installation of things like streetlights and pedestrian amenities. Also contained within the agreement were provisions for three "area identification signs," including (1) the "archway sign," which would span West Fourth Street between Keystone Avenue to the west and Vine Street to the east; (2) the "gas station sign," which would be positioned near a gas station on the corner of Keystone Avenue and West Fourth Street; and (3) the "cemetery sign," which would be near a cemetery and visible to those traveling eastbound on I-80 as they approach the Keystone Avenue exit. The three proposed signs would all contain the words "Reno's Neon Line District." The City Council approved the agreement and adopted it by ordinance.

Scenic—a nonprofit corporation aimed at educating the public on the benefits of scenic preservation by encouraging billboard control—opposed the development agreement. Scenic filed the operative petition in the district court requesting a writ of mandamus and/or prohibition,

---

[1]We originally resolved this matter by unpublished order on May 8, 2025. The Developers filed a motion to publish the order as an opinion. Cause appearing, the motion is granted. *See* NRAP 36(e). We now issue this opinion in place of the order.

arguing that the area identification signs contemplated within the agreement constituted billboards that violated city codes and that the Developers lacked the requisite interest to enter into the agreement. The district court partially granted and partially denied the petition. The court concluded that Scenic had standing to challenge the agreement and that the archway sign was a permissible area identification sign. But the district court found that the gas station sign was an on-premises advertising display and the cemetery sign was a billboard, both of which violated relevant code provisions. The district court severed the gas station and cemetery sign provisions from the agreement. Therefore, the district court issued a writ preventing the City from issuing building permits for, and the Developers from erecting, the gas station and cemetery signs. The agreement was otherwise left unchanged. Appeals from the Developers and the City, along with cross-appeals from Scenic, followed.

## DISCUSSION

The Developers and the City argue that Scenic lacks standing to challenge the development agreement and that the district court erred by reclassifying the gas station and cemetery area identification signs. Scenic contends that it has standing to challenge the agreement both because it is a party to a settlement agreement with the City concerning billboards and as a member of the public at large. And it asserts that, while the reclassification of the gas station and cemetery signs was warranted, the district court abused its discretion in refusing to reclassify the archway sign. Because at least one potential source of standing for Scenic is intertwined with the merits of the sign classification question, we first discuss that issue.

*The three proposed signs are area identification signs*

The Developers contend that the City properly classified the three signs as area identification signs and, as a result, the district court's reclassification of the gas station and cemetery signs was erroneous. Scenic argues that area identification signs must be classified as either on-premises signs or off-premises advertising displays (commonly referred to as billboards, for which we use the phrase interchangeably) under the RMC and thus the archway sign should be classified as an off-premises advertising display, but the district court otherwise did not err.

In reviewing these questions, we initially address whether area identification signs exist independently of on- and off-premises signs under the code. We then address whether the district court properly reclassified the proposed signs.

*Area identification signs are distinct from on-premises advertising displays and billboards*

We review de novo the interpretation of a municipal code provision. *City of Reno v. Citizens for Cold Springs*, 126 Nev. 263, 271-72, 236 P.3d 10, 16 (2010). "Courts must construe statutes and ordinances to give meaning to all of their parts and language." *Bd. of Cnty. Comm'rs of Clark Cnty. v. CMC of Nev., Inc.*, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983). We will avoid an interpretation that "renders language meaningless or superfluous," *Williams v. State, Dep't of Corr.*, 133 Nev. 594, 596, 402 P.3d 1260, 1262 (2017) (internal quotation marks omitted), and interpretations that lead to absurd results, *State, Priv. Investigator's Licensing Bd. v. Tatalovich*, 129 Nev. 588, 590, 309 P.3d 43, 44 (2013).

The RMC defines an area identification sign as "[a] permanent, decorative sign used to identify a neighborhood, subdivision, commercial or office complex, industrial district or similar distinct area of the community."

RMC 18.09, art. 4 (Area Identification Sign). The definitions of an off-premises advertising display and an on-premises display, on the other hand, are quite similar and, pertinent here, apply to signs that "advertis[e] or promot[e]" a "commercial interest."[2]

The plain language of these RMC provisions reveals that area identification signs and premises advertising displays have two distinct purposes: the principal purpose of an area identification sign is to identify an area of the community, while the principal purpose of an on-premises advertising display or a billboard is the promotion of a particular

---

[2]RMC 18.09, art. 4, defines an "off-premises advertising display" as:

> Any arrangement of material, words, symbols or any other display erected, constructed, carved, painted, shaped or otherwise created for the purpose of advertising or promoting the commercial interests of any person, persons, firm, corporation or other entity, located in view of the general public, which is not principally sold, available or otherwise provided on the premises on which the display is located. An off-premises advertising display includes its structure. Off-premises advertising displays are commonly called billboards.

And an on-premises display means:

> Any arrangement of material, words, symbols or any other display erected, constructed, carved, painted, shaped or otherwise created for the purpose of advertising or promoting the commercial interests of any person, persons, firm, corporation or other entity, located in view of the general public, which is principally sold, available or otherwise provided on the premises on which the display is located.

*Id.*

Supreme Court
OF
Nevada

(O) 1947A

6

commercial interest. We are unpersuaded by Scenic's contention that an area identification sign must be classified as either an on-premises advertising display or an off-premises advertising display. We must give meaning to the phrase "commercial interest" in the premises advertising display definitions to avoid rendering that language meaningless. That is, if an area identification sign did not have to meet the commercial interest test to classify as an on- or off-premises advertising display, that language would become superfluous. We conclude that area identification signs exist independently under the RMC and need not be classified as either an on- or an off-premises advertising display.

*The district court improperly reclassified the signs*

We next address whether the district court erred in its reclassification of the signs. A city's interpretation of its "own land use laws is cloaked with a presumption of validity and will not be disturbed absent a manifest abuse of discretion." *Boulder City v. Cinnamon Hills Assocs.*, 110 Nev. 238, 247, 871 P.2d 320, 326 (1994). "A manifest abuse of discretion is a clearly erroneous interpretation of the law or a clearly erroneous application of a law or rule." *State v. Eighth Jud. Dist. Ct. (Armstrong)*, 127 Nev. 927, 932, 267 P.3d 777, 780 (2011) (citation and internal quotation marks omitted). "This court will not substitute its judgment for that of a municipal entity if substantial evidence supports the entity's action." *Citizens for Cold Springs*, 126 Nev. at 271, 236 P.3d at 15-16. Substantial evidence means that "which 'a reasonable mind might accept as adequate to support a conclusion.'" *State, Emp't Sec. Dep't v. Hilton Hotels Corp.*, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), *superseded by statute on other grounds as stated in*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 192 P.3d 243 (2008).

The City does not regulate area identification signs in the same manner as other signs, and the City unambiguously classified the three signs at issue as area identification signs. Absent a manifest abuse of discretion, we will not disturb the City's classification. Analyzing the three signs at issue here, we conclude that the City has not clearly erred in its interpretation or application of the code. To be classified as an area identification sign, each of the three proposed signs must (1) be permanent, (2) be decorative, and (3) identify a distinct area of the community. *See* RMC 18.09, art. 4 (Area Identification Sign). Our review of the proposed signs supports the City's classification because each of the three proposed signs falls squarely within the definition of area identification signs. We are unpersuaded that minimal directional language or proximity to other signs necessarily promotes a commercial interest and overcomes the presumption that the City's classification was valid. Thus, substantial evidence supports the City's classification of the signs as area identification signs, and the district court's conclusion to the contrary was error. Having concluded that the three signs at issue are area identification signs, not on-premises advertising displays or billboards, we next address whether the district court correctly determined that Scenic had standing to challenge the development agreement through a writ petition.

*Scenic lacked standing to challenge the development agreement by way of petition for a writ of mandamus*

Standing is a question of law that we review de novo. *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011). As a threshold issue, "[s]tanding is the legal right to set judicial machinery in motion." *Heller v. Legislature of Nev.*, 120 Nev. 456, 460, 93 P.3d 746, 749

(2004) (internal quotation marks omitted). For the reasons set forth below, we conclude that Scenic lacked standing to challenge the development agreement by writ petition, and we therefore vacate the district court's order.

*Scenic lacks a beneficial interest in writ relief*

"To establish standing in a mandamus proceeding, the petitioner must demonstrate a 'beneficial interest' in obtaining writ relief." *Id.* at 460-61, 93 P.3d at 749. "To demonstrate a beneficial interest sufficient to pursue a mandamus action, a party must show a direct and substantial interest that falls within the zone of interests to be protected by the legal duty asserted." *Id.* at 461, 93 P.3d at 749 (quoting *Lindelli v. Town of San Anselmo*, 4 Cal. Rptr. 3d 453, 461 (Ct. App. 2003)). Writ relief is not appropriate if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if denied. *Id.*

Scenic argues that it has an interest in the development agreement stemming from a settlement agreement it previously reached with the City. In 2000, Reno voters passed a ballot initiative, sponsored by Scenic, banning the erection of billboards and prohibiting the City from issuing permits for billboard construction. Subsequently, the City Council created "banking and relocation" ordinances that allowed billboard owners to take down a billboard and "bank" a "receipt" that could be used to "relocate" the billboard elsewhere at a later date. Because the City enacted the banking and relocation process within three years of the ordinance's effective date, this court ruled that the process was unconstitutional and void ab initio. *Scenic Nev., Inc. v. City of Reno*, 132 Nev. 469, 474, 373 P.3d 873, 877 (2016).

Nevertheless, the City continued to allow the banking and relocation process; Scenic sought relief in the district court regarding the

City's actions, and Lamar Central Outdoor, LLC—which owned most of the existing billboards and banked receipts inventory—intervened. Eventually, the parties reached a settlement agreement on the matter. Under the terms of the settlement, the City was permitted to continue accepting banked receipts until the inventory of receipts expired by their terms. Thus, under the settlement, a billboard can still be erected in Reno if the sign company surrenders the necessary banked receipt and satisfies all other requirements under the RMC.

Scenic argues that the City had a legal duty to comply with signage laws and relevant statutes when adopting the ordinance and permitting the incorporated signage. And it argues that it is directly and substantially interested in the enforcement of signage laws pursuant to its settlement agreement with the City. However, having concluded that the three signs at issue are not billboards, Scenic has failed to demonstrate a beneficial interest in writ relief based on its rights under the settlement agreement. Scenic's settlement agreement with the City concerns only the regulation of billboards; Scenic cannot blanketly label any sign it disagrees with as a billboard and then assert that the settlement agreement gives it standing to challenge the signs or entire development agreements. Scenic has no direct and substantial interest in the development agreement when none of the signs the development agreement proposes are billboards, and thus, Scenic does not meet the standing requirement to seek writ relief.

We are also unpersuaded by Scenic's contention, and the district court's rationale, that our jurisprudence allows unfettered challenges to land use decisions by the public at large. In very limited circumstances, we have recognized standing on behalf of the public, but pertinent to these circumstances is that standing for the general public was

(O) 1947A

conferred under particular statutes. *See, e.g., Citizens for Cold Springs v. City of Reno (Cold Springs I)*, 125 Nev. 625, 629-30, 218 P.3d 847, 850 (2009) (land annexation under NRS 268.668); *Hantges v. City of Henderson*, 121 Nev. 319, 322-23, 113 P.3d. 848, 850 (2005) (redevelopment plans under NRS 279.609). In cases where standing was not conferred under statute, this court has required that the challenger have a beneficial interest in challenging the land use. *See Mesagate Homeowners' Ass'n v. City of Fernley*, 124 Nev. 1092, 1097, 194 P.3d 1248, 1252 (2008) (explaining that "[i]n the absence of a beneficial interest, a writ petition must be denied").

Here, NRS 278.0201-.0207 govern challenges to development agreements. These statutes provide no enforcement mechanism that would allow Scenic to sue on behalf of the public at large. Rather, these statutes confer standing on *the parties to the agreement* to pursue a private cause of action. NRS 278.3195 provides a mechanism for private individuals to challenge land use decisions. But these individuals still must be "aggrieved" pursuant to the statute. And an aggrieved person under the municipal code is "one whose personal right or right of property is adversely and substantially affected by the action of a discretionary body."[3] RMC 18.09, art. 4 (Aggrieved Person). Scenic has not established any personal or property right that is adversely and substantially affected by the ordinance. Scenic does not own any property that is subject to the

---

[3]NRS 278.3195(1) defines the term "aggrieved" for counties with populations of 700,000 or more. When a county does not meet this population threshold, the relevant code will apply. *See City of North Las Vegas v. Eighth Jud. Dist. Ct.*, 122 Nev. 1197, 1206, 147 P.3d 1109, 1115 (2006) (explaining that the amendment to NRS 278.3195 "was not intended to preclude ordinances from . . . addressing who may appeal from a planning decision").

agreement, is not a party to the agreement, and will suffer no direct harm if the entirety of the agreement is enforced. Outside of its contention that the signs are unlawful billboards, Scenic's only purported purpose is to protect the future interests of potential title holders who might have clouded title because the Developers have certain parcels held by their affiliate entities. This is not a direct detriment *to Scenic*, and Scenic cannot litigate speculative future injury to other entities. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that to establish standing, an injury must be two things: (1) concrete and particularized and (2) actual or imminent, not hypothetical). We therefore conclude that Scenic lacked standing to seek writ relief.

*The settlement agreement cannot confer standing because the signs are not billboards*

Scenic argues that its 2017 settlement agreement with the City confers standing. Because the terms of the settlement agreement require a banked receipt to erect a billboard in Reno, Scenic argues that the development agreement's allowance of billboards without a banked receipt violates its contract with the City. The district court agreed. Having concluded that the three signs at issue are not billboards, we further conclude that the settlement agreement is inapplicable here. The settlement agreement only concerns the regulation of billboards, and thus, given that the signs are not billboards, Scenic has no standing under that settlement agreement to challenge the signs or the agreement as a whole. Therefore, we conclude that the settlement agreement cannot confer standing on Scenic to challenge the development agreement.

We also note that writ relief was not appropriate because Scenic could have enforced any alleged breach of the settlement agreement under contract law. *See* NRS 34.170 (providing that mandamus relief is not

appropriate if the petitioner has a "plain, speedy and adequate remedy in the ordinary course of law"); *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005) ("Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law."). Thus, we hold that it was error for the district court to issue writ relief.

*Scenic waived representational standing*

The district court relied, in part, on its conclusion that Scenic had representational standing. However, Scenic expressly disclaimed representational standing to the district court and concedes on appeal that it did not allege representational standing below. We therefore conclude that Scenic has waived any argument as to representational standing. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court, unless it goes to the jurisdiction of that court, is deemed to have been waived and will not be considered on appeal.").

## CONCLUSION

In sum, we conclude that the district court failed to apply the correct legal presumption and improperly reclassified the signs. The three signs addressed within the development agreement are area identification signs as defined under the RMC—not billboards or on-premises advertising displays. Therefore, Scenic lacks standing to challenge the development agreement because Scenic failed to meet the beneficial interest requirement for writ relief, Scenic cannot rely on the settlement agreement given that the signs are not billboards, and Scenic waived any argument based on representational standing below.[4] Given that Scenic's lack of standing is

---

[4]Given our conclusion, we need not address the parties' remaining claims on appeal.

dispositive as to its ability to challenge the development agreement, we vacate the district court's order and remand this matter to the district court for proceedings consistent with this opinion.

_____, C.J.
Herndon

We concur:

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee